UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BIOMEDICAL PATENT MANAGEMENT CORP., a
California Corporation,

                Plaintiff,

     v.

STATE OF CALIFORNIA, DEPARTMENT OF
HEALTH SERVICES, an arm of the State of
California,

                Defendant.

_____/

No. C 06-00737 MHP

**MEMORANDUM & ORDER**
**Re: Motion to Dismiss**

      Plaintiff Biomedical Patent Management Corp. ("BPMC") filed this patent infringement lawsuit against defendant California Department of Health Services ("DHS").  Now before the court is DHS's motion to dismiss based on sovereign immunity under the Eleventh Amendment to the United States Constitution.  Having considered the parties' arguments and submissions, and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND[1]

      BPMC is the holder of United States Patent No. 4,874,693 (the '693 patent), covering a method of prenatal screening for fetal chromosomal abnormalities.  DHS operates a prenatal screening program that allegedly makes use of the method claimed in the '693 patent.

      The parties have engaged in previous litigation under the '693 patent that is relevant to defendant's motion to dismiss.  On August 28, 1997 Kaiser Foundation Health Plan, Inc. filed a declaratory judgment action against BPMC in the Northern District of California, seeking a

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

declaration that Kaiser did not infringe any valid or enforceable claim of the '693 patent. DHS filed

a motion to intervene on September 30, 1997, seeking a similar declaration. Plaintiff's Request for

Judicial Notice ("Plaintiff RJN"), Exh. 1. The court granted DHS's motion to intervene, and DHS

filed a complaint in intervention on December 15, 1997. Id., Exh. 2. BPMC subsequently filed

counterclaims for patent infringement against both Kaiser and DHS, which DHS answered on April

8, 1998. Id., Exhs. 3–4. The 1997 action was ultimately dismissed without prejudice on May 6,

1998 for improper venue.

Just six days later, on May 12, 1998 BPMC filed a lawsuit against DHS in the Southern

District of California, again alleging infringement of the '693 patent. Defendant's Request for

Judicial Notice ("Defendant RJN"), Exh. 1. DHS answered on June 5, 1998, but asserted an

affirmative defense based on Eleventh Amendment sovereign immunity. Id., Exh. 2 ¶ 19.

On June 30, 1998 the Federal Circuit decided Florida Prepaid Postsecondary Education

Expense Board v. College Savings Bank, 148 F.3d 1343 (Fed. Cir. 1998), rev'd, 527 U.S. 627

(1999). In Florida Prepaid, the Federal Circuit held that Congress validly abrogated state sovereign

immunity to patent infringement lawsuits. Id. at 1355. Florida promptly petitioned for certiorari.

On October 8, 1998, BPMC sought to dismiss the Southern District lawsuit without prejudice

under Federal Rule of Civil Procedure 41(a)(2). Defendant RJN, Exh. 8. In requesting dismissal,

BPMC noted the large number of Eleventh Amendment cases, including Florida Prepaid, then

pending before the Supreme Court. See id. at 2, 5–7 (citing College Sav. Bank v. Florida Prepaid

Postsecondary Educ. Expense Bd., 131 F.3d 353 (3d Cir. 1997), aff'd, 527 U.S. 666 (1999); Chavez

v. Arte Publico Press, 139 F.3d 504 (5th Cir. 1998), vacated en banc, 180 F.3d 674 (5th. Cir 1999);

and Florida Prepaid, 148 F.3d at 1343). BPMC argued that it would serve the interests of judicial

economy to wait for the law of sovereign immunity to be clarified. Id.

The court granted BPMC's motion to dismiss on November 20, 1998, noting that voluntary

dismissal without prejudice under Rule 41(a)(2) should be liberally granted unless it will harm the

defendant. Id., Exh. 11 at 5. The court found that DHS would not be harmed by the dismissal, as

the discovery exchanged by the parties would continue to be useful in a future lawsuit. Because the

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1   court found that DHS would not be harmed, it dismissed the case without prejudice.  Id. at 5.  The

2   court also noted that "[a]lthough not required to do so, BPMC has provided a valid reason for the

3   dismissal"—namely, the unresolved status of DHS's sovereign immunity defense.  Id. at 4.

4          The Supreme Court granted certiorari in Florida Prepaid on January 8, 1999 and

5   subsequently ruled on June 23, 1999 that Congress lacks authority to abrogate state sovereign

6   immunity under Article I of the Constitution, and that Congress's attempt to abrogate immunity to

7   patent infringement lawsuits exceeded the scope of its authority under the Fourteenth Amendment.

8   Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank, 527 U.S. 627 (1999).  In a

9   companion case decided the same day, the Court abrogated the constructive waiver doctrine, under

10  which a state entity may implicitly waive its sovereign immunity by voluntarily participating in a

11  federally regulated activity.  College Sav. Bank, 527 U.S. at 680 (overruling Parden v. Terminal R.

12  of Ala. Docks Dept., 377 U.S. 184 (1964)).  The combined effect of Florida Prepaid and College

13  Savings Bank was to prohibit patent infringement suits seeking monetary recovery from state

14  entities absent an express waiver of immunity by the state.

15         Almost seven years after Florida Prepaid was decided, BPMC filed this lawsuit, once again

16  alleging infringement of the '693 patent.  DHS now moves to dismiss, arguing that it is immune

17  from suit under the law as clarified in Florida Prepaid and College Savings Bank.

18

19  DISCUSSION

20         BPMC argues that DHS lacks sovereign immunity under four separate theories.  First, BPMC

21  contends that DHS's decision to intervene in the 1997 lawsuit serves as a waiver in the instant

22  lawsuit, which involves the same parties and the same patent.  Second, BPMC argues that DHS is

23  judicially estopped from asserting immunity because the court accepted DHS's jurisdictional

24  arguments in allowing DHS to intervene in the 1997 lawsuit.  Third, BPMC argues that the State of

25  California's large-scale participation in the patent system serves as a general waiver of immunity for

26  all state defendants in patent infringement suits.  Finally, BPMC argues that a Supreme Court

27

28

3

UNITED STATES DISTRICT COURT
For the Northern District of California

1   decision issued this term, Central Virginia Community College v. Katz, 126 S. Ct. 990 (2006),

2   implicitly overrules Florida Prepaid.

3       The court will consider each argument in turn.

4

5   I.    Waiver Based on the 1997 Lawsuit

6       DHS concedes that its intervention in the 1997 lawsuit was a waiver of immunity with

7   respect to that lawsuit, including BPMC's compulsory patent infringement counterclaims.  See

8   Defs.' Reply Brief at 5; Regents of the Univ. of N.M. v. Knight, 321 F.3d 1111, 1126 (Fed. Cir.),

9   cert. denied sub nom Scallen v. Regents of the Univ. of N.M., 540 U.S. 820 (2003) ("when a state

10  files suit in federal court to enforce its claims to certain patents, the state shall be considered to have

11  consented to have litigated in the same forum all compulsory counterclaims.").

12      The parties disagree, however, as to whether DHS's waiver in the 1997 lawsuit extends to

13  this lawsuit.  BPMC argues that waiver of immunity in a prior lawsuit serves as a waiver with

14  respect to subsequent suits concerning the same matter, and that this lawsuit, which involves the

15  same parties, patent, and accused conduct as the 1997 lawsuit, is within the scope of the 1997

16  waiver.  DHS counters that its assertion of sovereign immunity in the 1998 lawsuit, coupled with

17  BPMC's failure to argue waiver of immunity in that case, permits DHS to assert sovereign immunity

18  as a defense in this lawsuit.

19      As a threshold matter, the court must determine which body of waiver law to apply.  This

20  patent lawsuit falls within the appellate jurisdiction of the Federal Circuit, which applies its own law

21  when necessary to "promot[e] national uniformity in patent law."  Knight, 321 F.3d at 1124.  In

22  Knight, the Federal Circuit held that questions of Eleventh Amendment waiver in a patent

23  infringement lawsuit are governed by Federal Circuit law.  This court will therefore apply Federal

24  Circuit law, to the extent that it exists, in determining whether DHS's previous waiver extends to

25  this lawsuit.

26      The Federal Circuit has held that the effect of a voluntary dismissal "is to render the

27  proceedings a nullity and leave the parties as if the action had never been brought."  Graves v.

28

4

1   <u>Principi</u>, 294 F.3d 1350, 1356 (Fed. Cir. 2002); <u>Bonneville Assocs. Ltd. P'ship v. Barram</u>, 165 F.3d

2   1360, 1364 (Fed. Cir.), <u>cert. denied</u>, 528 U.S. 809 (1999).  Thus, a party who dismisses an appeal

3   without prejudice after the applicable filing period has lapsed loses the ability to refile the appeal at

4   a later date.  <u>Graves</u>, 294 F.3d at 1356.

5           The Federal Circuit has not ruled on the precise question currently before the court:  whether

6   dismissal without prejudice of a lawsuit has the effect of negating any waiver of sovereign immunity

7   made during the course of that lawsuit.  This court therefore turns to Ninth Circuit law, which

8   embraces precisely the same rule as the Federal Circuit for dismissals without prejudice.  <u>See</u>

9   <u>Navellier v. Sletten</u>, 262 F.3d 923, 938 (9th Cir. 2001), <u>cert. denied sub nom</u> <u>McLachlan v. Simon</u>,

10  536 U.S. 941 (2002) ("A dismissal without prejudice pursuant to Rule 41(a)(2) leaves the parties

11  where they would have stood had the lawsuit never been brought." (quoting <u>In re Corey</u>, 892 F.2d

12  829, 835 (9th Cir. 1989), <u>cert. denied</u>, 498 U.S. 815 (1990))); <u>Concha v. London</u>, 62 F.3d 1493,

13  1506 (9th Cir. 1995), <u>cert. dismissed</u>, 517 U.S. 1183 (1996) (a dismissal without prejudice "leaves

14  the parties as though no action had been brought.").

15          The Ninth Circuit considered the significance of a waiver of sovereign immunity in a

16  previous lawsuit that was dismissed without prejudice in <u>City of South Pasadena v. Mineta</u>, 284 F.3d

17  1154 (9th Cir. 2002).  In <u>City of South Pasadena</u>, the plaintiff originally sued the state of California

18  in 1973 to prevent construction of a freeway through South Pasadena.  <u>Id.</u> at 1155.  The parties

19  stayed the litigation pending final approval of the freeway plans by federal and California

20  authorities.  <u>Id.</u>  When final approval was granted in 1998, the plaintiff sought leave to amend its

21  complaint in order to add new parties and claims which arose during the period between 1973 and

22  1998.  The district court refused to permit amendment, and the parties stipulated to dismissal without

23  prejudice of the 1973 lawsuit.  <u>Id.</u> at 1156.  Plaintiff then filed a new lawsuit, asserting a mixture of

24  old and new claims.  <u>Id.</u>  The State of California asserted a sovereign immunity defense.  <u>Id.</u>  The

25  district court found that California had waived its sovereign immunity through its voluntary

26  participation during the twenty-five-year pendency of original federal litigation.  <u>Id.</u>

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1        The Ninth Circuit reversed, holding that Federal Rule of Civil Procedure 41(a)(1), which

2   provides for voluntary dismissal, "disallows the carry-over of any waivers from a voluntarily

3   dismissed action to its reincarnation."  Id. at 1158.  The effect of a dismissal without prejudice is to

4   "leave[] the situation as if the action never had been filed."  Id. at 1157 (citing 9 Charles Alan

5   Wright & Arthur R. Miller, Federal Practice and Procedure § 2367, at 321 (2d ed.1995)).  Because

6   the first federal action was dismissed without prejudice under Rule 41(a)(1), the state defendants

7   were entitled to assert sovereign immunity in the second action despite having waived immunity in

8   the first.  Id. at 1158 ("Because the state promptly raised the immunity defense against state law

9   claims in the current litigation, and because these claims are undisputably of the type barred by the

10  Eleventh Amendment, the district court erred in failing to dismiss them."); cf. id. at 1157 ("By

11  failing to invoke the immunity defense during the pendency of the 1973 action, the state waived

12  it.").

13       Here, as well, DHS wishes to assert sovereign immunity in this lawsuit despite having

14  waived it in the 1997 lawsuit.  The 1997 lawsuit in this case differs from the 1973 lawsuit in City of

15  South Pasadena in only one material respect:  it was dismissed involuntarily for lack of proper venue

16  pursuant to Rule 41(b) rather than voluntarily pursuant to Rule 41(a).  Rule 41(b), however, provides

17  for dismissal "without prejudice" in certain circumstances, such as "for improper venue."  Fed. R.

18  Civ. P. 41(b).  Courts and commentators have consequently interpreted a dismissal without prejudice

19  under Rule 41(b), like a dismissal without prejudice under Rule 41(a), to "leave[] the situation as if

20  the action never had been filed."  See 9 Charles Alan Wright & Arthur R. Miller, Federal Practice

21  and Procedure § 2373 n.8 (2d ed.1995) (noting that "[d]ismissal without prejudice [under Rule

22  41(b)] leaves the situation as if the suit never had been brought." (citing Bomer v. Ribicoff, 304 F.2d

23  427 (6th Cir. 1962))); 8-41 Moore's Federal Practice - Civil § 41.50 ("When the district court elects

24  to dismiss an action without prejudice under Rule 41(b), the dismissal leaves the parties in the same

25  legal position as if no suit had been filed."); Hilbun v. Goldberg, 823 F.2d 881, 883 (5th Cir. 1987),

26  cert. denied, 485 U.S. 962 (1988) ("A federal court that dismisses without prejudice a suit arising

27  from a federal statutory cause of action has not adjudicated the suit on its merits, and leaves the

28

6

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    parties in the same legal position as if no suit had ever been filed."). The reasoning of the Ninth

2    Circuit in <u>City of South Pasadena</u> is thus equally applicable in the Rule 41(b) context.

3        The cases cited by BPMC in support of its argument that DHS is bound by its waiver in the

4    1997 lawsuit are not applicable. In <u>Lapides v. Board of Regents of the University System of</u>

5    <u>Georgia</u>, the plaintiff brought a lawsuit against an arm of the state of Georgia in state court. 535

6    U.S. 613, 616 (2002). The state then removed to federal court and simultaneously moved to dismiss

7    based on Eleventh Amendment immunity. <u>Id.</u> The Supreme Court held that Georgia waived its

8    immunity by removing to federal court. <u>Id.</u> at 624. In reaching that conclusion, the Court noted that

9    to rule otherwise could generate "seriously unfair results" by allowing states to selectively invoke or

10   deny federal jurisdiction in order to achieve tactical litigation advantage. <u>Id.</u> at 619. Lapides is not

11   applicable in this case because, as discussed above, the waiver took place in a previous action which

12   was dismissed without prejudice. The state has not waived its immunity through invocation of

13   federal jurisdiction in this action.

14        Plaintiff cites <u>Gunter v. Atlantic Coast Line Railroad Co.</u>, 200 U.S. 273 (1906) in support of

15   its argument that the previous waiver should extend to this lawsuit. In <u>Gunter</u>, a railroad company

16   shareholder had previously sued the state of South Carolina to prevent the collection of taxes levied

17   against the railroad. South Carolina participated in the original lawsuit without objection. <u>Id.</u> at

18   278. The shareholder prevailed, and the court entered an injunction preventing the state from

19   collecting the taxes. <u>Id.</u> at 278–79. Twenty-five years then elapsed, during which the state made no

20   attempt to collect the taxes. <u>Id.</u> at 279. When the state again attempted to do so, the railroad filed a

21   petition in federal court seeking to enforce the previous injunction. <u>Id.</u> at 281–82. The state argued

22   that, under the Eleventh Amendment, the federal court lacked jurisdiction to enforce the injunction.

23   <u>Id.</u> at 291. The Supreme Court disagreed, holding that a federal court has jurisdiction when "acting

24   in a manner ancillary to a decree rendered in a cause over which it had jurisdiction." <u>Id.</u> at 292. In

25   <u>Gunter</u>, unlike in the instant case, the plaintiff was suing to enforce a "decree rendered in a cause

26   over which [the federal courts] had jurisdiction"—i.e., the injunction entered in the original case.

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1   See id. Here, in contrast, the original case did not result in a final decision with preclusive effect.

2   Rather, it was dismissed without prejudice.

3       The court therefore finds that DHS has not waived its sovereign immunity in this suit solely

4   because it waived immunity in the 1997 lawsuit, which was dismissed without prejudice.

5

6   II.      Judicial Estoppel

7       DHS's conduct in the 1997 lawsuit, however, went beyond mere waiver. It actively asserted

8   federal jurisdiction in order to intervene in the lawsuit. The court accepted DHS's argument and

9   permitted it to intervene. BPMC claims that the court's acceptance of DHS's argument raises a

10  judicial estoppel which prevents DHS from asserting immunity in this case.

11      "Judicial estoppel is a flexible equitable doctrine that encompasses a variety of abuses, one

12  form of which is preclusion of inconsistent positions that estops a party from gaining an advantage

13  by taking one position and then seeking another advantage from an inconsistent position." In re

14  Cheng, 308 B.R. 448, 452 (B.A.P. 9th Cir. 2004). Although judicial estoppel is an equitable

15  doctrine that is not easily defined, the United States Supreme Court has identified three factors that

16  are relevant to the application of the doctrine. New Hampshire v. Maine, 532 U.S. 742, 750 (2001).

17  First, a party's position in the second matter must be "clearly inconsistent" with its position in the

18  first matter. Id. Second, a court must have accepted the party's earlier position. Id. at 750–751

19  (noting that a party's inconsistent position does not pose a threat to judicial integrity unless

20  accepted). The third consideration is whether the party asserting an inconsistent position "would

21  derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Id.

22  at 751.

23      It is not disputed that DHS affirmatively asserted that the court had jurisdiction over its

24  declaratory relief claims in the 1997 action, and that the court accepted DHS's argument. It is also

25  not disputed that DHS will obtain a significant advantage—absolute immunity from monetary

26  damages—by asserting sovereign immunity in this suit.

27

28

8

1    The problem with applying judicial estoppel in this case is that DHS's position in the 1997

2  litigation is not clearly inconsistent with its position in this case, given the substantial intervening

3  change in federal law.  When the 1997 lawsuit commenced, it was not settled whether DHS was

4  entitled to assert a sovereign immunity defense.  Only in 1999, after the Supreme Court decided

5  Florida Prepaid, did the defense of sovereign immunity clearly apply to patent lawsuits.  DHS's

6  change in position mirrors this change in the law.  DHS is therefore not precluded from asserting

7  immunity in this case.[2]

8

9    III.    California's Exploitation of the Patent System

10    BPMC next argues that California's "massive exploitation of the patent system," particularly

11  through the University of California, serves as a general waiver of immunity with respect to patent

12  infringement actions.  DHS counters that it is a separate branch of the state and should not be bound

13  by the choices of other state agencies to participate in large-scale patent prosecution and litigation.

14  DHS also claims that BPMC is attempting to revive so-called constructive waiver doctrine which

15  was abrogated by the Supreme Court in College Savings Bank.

16    The court is indeed troubled by the University of California's ability to reap the benefits of

17  the patent system without being exposed to liability for infringement.  Similarly situated private

18  universities enjoy no such advantage.  Regardless of the wisdom of the currently governing law,

19  however, the law is clear:  a state entity remains immune from lawsuit even "where a State runs an

20  enterprise for profit, operates in a field traditionally occupied by private persons or corporations,

21  engages in activities sufficiently removed from 'core [state] functions,' . . . or otherwise acts as a

22  'market participant' in interstate commerce."  College Savings Bank, 527 U.S. at 680.  BPMC's

23  description of California's participation in the patent system falls squarely under the rubric of

24  constructive waiver which was rejected when the College Savings Bank court overruled Parden.

25  The fact that California actually waived immunity by pursuing past patent lawsuits—including the

26  predecessor to the instant lawsuit—does not serve as an express waiver of immunity in this lawsuit.

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

IV.   The Effect of Katz

Finally, BPMC argues that the Supreme Court implicitly overruled Florida Prepaid and College Savings Bank in Katz, decided this term.  The holding in Katz is carefully circumscribed, however, and does not extend beyond the realm of federal bankruptcy law, which the Supreme Court apparently regards as *sui generis* based on the history of the Bankruptcy Clause.  Katz, 126 S. Ct. at 1004 ("The ineluctable conclusion, then, is that States agreed in the plan of the Convention not to assert any sovereign immunity defense they might have had in proceedings brought pursuant to 'Laws on the subject of Bankruptcies.'").  The court carefully distinguished previous Article I sovereign immunity decisions such as Seminole Tribe of Fla. v. Florida, 517 U.S. 44 (1996) based on the peculiar *in rem* nature of bankruptcy proceedings.  Id. at 1000 ("Bankruptcy jurisdiction, as understood today and at the time of the framing, is principally *in rem* jurisdiction.").  Although the dissent in Katz criticized the majority for "cast[ing] aside" the "settled doctrine" that Article I of the Constitution does not provide Congress with the authority to abrogate sovereign immunity, see id. at 1005–06 (Thomas, J., dissenting), the majority did not mention Florida Prepaid or College Savings Bank at all, much less overrule them.  While Katz may signal a retreat from the rigid distinction between Congressional authority under Article I and the Fourteenth Amendment, BPMC's interpretation of the decision is far broader than its actual language will permit.

10

CONCLUSION

For the foregoing reasons, the court hereby GRANTS DHS's motion to dismiss BPMC's complaint without prejudice. BPMC may file an amended complaint if it chooses, naming appropriate parties and seeking appropriate relief, within 30 days of this order.


IT IS SO ORDERED.


Dated: June 5, 2006

MARILYN HALL PATEL
District Judge
United States District Court
Northern District of California

11

## ENDNOTES

1.  Unless otherwise noted, background facts are taken from plaintiff's complaint.

2.  As the court finds that judicial estoppel does not bar DHS's immunity defense, it need not reach DHS's separate contention that BPMC's failure to raise its waiver argument in the 1998 litigation precludes it from doing so now.